[No. A054352. First Dist., Div. Two. Nov. 4, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
EDMUNDO ESCOBAR BLANCO, Defendant and Appellant.

**COUNSEL**

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Donna B. Chew, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PETERSON, J.\***—Appellant contends that the 1991 amendment to Evidence Code section 1103, subdivision (b)—which allows the introduction of evidence of a defendant's violent acts and reputation for violence, if a defendant presents evidence as to the bad acts or reputation of the victim of a crime—violates the due process rights of a criminal defendant and is, therefore, unconstitutional. We reject this contention, find no reversible error, and affirm the judgment of conviction.

### I. FACTS AND PROCEDURAL HISTORY

It is uncontested that appellant shot the murder victim in the back, shortly after they had had a violent street dispute over drugs or money. The major issue contested at trial was appellant's claim that he fired in self-defense. We summarize the evidence briefly to provide necessary factual background.

The prosecution evidence showed that a prostitute purchased some cocaine from appellant; when she learned that what she had been given by appellant was not in fact cocaine, she tried to get her money back from appellant and enlisted the help of the victim, her protector or enforcer. The prostitute and the victim became involved in an argument with appellant which escalated to fisticuffs; the prostitute testified that appellant tried to

*Presiding Justice of the Court of Appeal, First District, Division Five, sitting under assignment by the Chairperson of the Judicial Council.

land a blow on her, but was stopped by the victim, who then proceeded to batter appellant with his fists. Appellant refunded the money and retreated after being bested in this fistfight; the prostitute and the victim went about their business.

Some 15 or 20 minutes thereafter, appellant shot the victim in the back in revenge; there was no fighting or yelling preceding the shooting.

The defense evidence was that the victim was a violent man who had a history of accosting people and demanding money, and that he tried to rob appellant. Appellant testified he fired in self-defense during the ensuing struggle.

The prosecution's forensic evidence showed the victim died from a gunshot wound fired into his back from some distance away. That evidence was inconsistent with appellant's claim he fired in self-defense during a struggle. Further, every other witness testified the initial struggle had long expired when appellant returned to the street and fired one shot into the victim's back, killing him. Although appellant testified that the killing had nothing to do with a dispute over drugs, and that he did not sell drugs, he admitted a previous conviction for drug sales and was impeached with evidence of witnesses who bought drugs from appellant.

Appellant also testified that, although he had formerly been a soldier in the Nicaraguan National Guard, he now had to avoid getting in fights because of stomach wounds he had received in battle, which necessitated the replacement of certain internal organs with plastic parts. Coupled with the defense evidence as to the victim's violent nature, this evidence was intended to support a defense theory that appellant was, due to his injuries, now a peaceable man who would not engage in violence; according to appellant's testimony, "I can't fight with anybody."

The prosecution then sought to adduce evidence to rebut this defense claim by showing that appellant was also a violent man like his victim. The prosecution contended this evidence was admissible under the newly amended Evidence Code[1] section 1103, subdivision (b) (section 1103(b)). The defense argued the evidence was not admissible under that section; although the defense had also briefly alluded to "constitutional minefields in this new statute" when disputing the introduction of this evidence in a previous colloquy, the only "minefield[ ]" mentioned was that the section "puts into a separate category those defendants who wish to offer evidence showing self-defense." Ultimately even this glimmer of a constitutional

---

[1]All subsequent statutory references are to the Evidence Code.

argument was apparently abandoned, and appellant framed the issue only in terms of the application of the statute, arguing that "I don't think [section] 1103 applies at all." The prosecution also pointed out that, quite apart from the application of section 1103(b), the evidence as to appellant's violence was admissible to rebut his claims in his testimony that he did not have any fights before the killing, due to his stomach injury.

The trial court applied section 1103(b), ruling that certain evidence offered by the prosecution would be admissible, while utilizing its discretion under section 352 to bar prosecution evidence that appellant's wife told the police he had a gun and had told her during a domestic dispute he was going to kill her.

The prosecution then adduced evidence that appellant had been involved in violent disputes and associated threats against his wife and neighbors which caused him to have a reputation for violence; as part of this evidence, it was shown that appellant had beaten his wife while she was holding her little daughter, tried to kick down a neighbor's door and made a variety of threats against her, and threatened another neighbor and his family with violence.

The jury convicted appellant of second degree murder and the use of a firearm during the offense. The trial court imposed a sentence of 15 years to life, plus 4 years for the use of the firearm. Appellant brought a timely appeal.

## II. DISCUSSION

We affirm. We are somewhat dubious as to whether there was a timely and specific objection below, sufficient to allow appellant to raise on appeal the argument he now makes in contending that section 1103(b) is unconstitutional for violation of his due process rights. In any event, we find no constitutional infirmity or other error on these facts. Further, any possible error here would be harmless, since the evidence in question was either independently admissible, or could not have affected the outcome of this trial.

### A. *Was There a Sufficiently Specific Objection?*

█ Appellant contends that section 1103(b) violates his constitutional due process rights, by making evidence of his prior violent acts and reputation for violence admissible when he had not proffered evidence as to *his* reputation for or character trait of violence, and had only sought to introduce

evidence as to the character of the *victim* as a violent man prone to assault and robbery. We have great difficulty finding an objection below which bears any close resemblance to this appellate contention of a violation of constitutional due process.

Appellant's objection below was that section 1103(b) did not apply here, not that it violated constitutional due process. Appellant's counsel did allude vaguely in colloquy with the trial court to certain "constitutional mine-fields," without specifying which constitution or constitutional provision he was talking about; but the only claim actually mentioned was the argument that the statute "puts into a separate category those defendants who wish to offer evidence showing self-defense." This claim, of course, is false; the statute does not allow evidence of the defendant's character in every case where self-defense is asserted as a defense; it only allows such evidence where the defendant *first* presents evidence of the victim's character for violence as a means of showing the defendant's alleged reasonable response to the victim's violence.

As for appellant's due process argument which he now raises, our Supreme Court has expressly refused to reach the merits of a similar constitutional due process claim where no timely and specific objection was made below. In *People* v. *Gordon* (1990) 50 Cal.3d 1223, 1240, footnote 2 [270 Cal.Rptr. 451, 792 P.2d 251], our Supreme Court declined to address an analogous belated claim of a due process violation, where the prosecution introduced evidence the defendant robbed a retail establishment in order to show he was likely to be involved in the robbery of another store: "Defendant claims the court's ruling was error under the United States Constitution as well as the Evidence Code. He argues that the ruling violated his right to due process under the Fourteenth Amendment. We reject the point at the threshold. It is, of course, 'the general rule that questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court on the ground sought to be urged on appeal.' [Citation.] At trial defendant failed to make a sufficient objection that the admission of the evidence of the Riverside K mart incident would violate his federal constitutional right to due process." (Accord, *People* v. *Raley* (1992) 2 Cal.4th 870, 892 [8 Cal.Rptr.2d 678, 830 P.2d 712] ["We reject the constitutional arguments because no objection on these grounds was raised below."]; *People* v. *Benson* (1990) 52 Cal.3d 754, 788 [276 Cal.Rptr. 827, 802 P.2d 330].)

However, our Supreme Court and other appellate courts have also sometimes addressed such constitutional questions in the absence of proper objection below. (See, e.g., *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149

Cal.Rptr. 375, 584 P.2d 512] ["[A]lthough California authorities on the point are not uniform, our courts have several times examined constitutional issues raised for the first time on appeal, especially when the enforcement of a penal statute is involved [citation] . . . ."]; *People* v. *Allen* (1974) 41 Cal.App.3d 196, 201, fn. 1 [115 Cal.Rptr. 839] [This court (Division Two) reached the merits of a constitutional evidence challenge even though the record showed no objection, because "the constitutional question can properly be raised for the first time on appeal [citation]."]; *People* v. *Norwood* (1972) 26 Cal.App.3d 148, 153 [103 Cal.Rptr. 7] ["A matter normally not reviewable upon direct appeal, but which is . . . vulnerable to habeas corpus proceedings based upon constitutional grounds may be considered upon direct appeal."]; *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 5 [97 Cal.Rptr. 431] ["[W]hether the rule shall be applied is largely a question of the appellate court's discretion."].)

In an exercise of our discretion, in view of the fact that an issue of some significance is raised, and in order to avoid a subsequent habeas corpus proceeding raising the same point, we will address appellant's due process challenge.

### B.   *Constitutionality of Section 1103(b)*

We find no constitutional infirmity in section 1103(b) on the facts disclosed by the record here. The critical statutory language in issue is as follows: "In a criminal action, evidence of the defendant's character for violence or trait of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is not made inadmissible by Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character *and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant . . . ." (Ibid.,* italics added.) This language was added by an urgency amendment in March 1991 (Stats. 1991, ch. 16, § 1); we have taken judicial notice of the legislative history of the 1991 amendment.

Our own research discloses that the new California rule enacted in 1991 is a distinctly minority view in common law jurisdictions, although it also does have some powerful support in the case law and among legal commentators. By this amendment, California has adopted the view originally espoused by Wigmore, that evidence of the defendant's violent character is admissible if the defendant offers evidence of the victim's violent character in aid of a claim of self-defense: "If the [victim's] character for violence has thus been

introduced by the defendant, the same principle would then justify the prosecution (or plaintiff) in introducing the defendant's character for violence, by way of exception to the rule [that evidence of the defendant's character is not generally admissible]." (IA Wigmore, Evidence (Tillers ed. 1983) § 63, pp. 1378-1379.) This remains the rule in England. (*Id.* at p. 1379, fn. 7.)

However, most American jurisdictions, under the influence of the general rule that the bad character of the defendant should not be admissible by prosecution evidence unless the accused first tenders the issue, have barred this evidence. Significantly, however, they did so as a matter of statutory construction, common law development, or application of theoretical and jurisprudential principles; we are cited to no authority, and our own research has found none, which explicitly endorses appellant's argument that the Wigmore view violates constitutional due process principles and that, therefore, a statute adopting the Wigmore rule would be unconstitutional. On the contrary, it appears that this issue is a matter of scholarly and judicial debate which has not heretofore been viewed as implicating issues of constitutional significance.

For instance, the reviser of Wigmore's treatise criticizes Wigmore's rule on a miscellany of grounds, suggesting "There is little authority, except in England, to support Wigmore's view. Furthermore, the theory is crude, implying tit for tat. Moreover, there are special reasons not to allow the use of character evidence against an accused . . . . It should not be forgotten that the accused is on trial, whereas in a criminal prosecution the victim, except in a metaphorical and symbolic sense, is not." (IA Wigmore, Evidence, *op. cit. supra,* § 63, p. 1379, fn. 7.) More careful analysis, however, might reveal that it is this criticism which is "crude" and that Wigmore's theory embodies, albeit in summary form, a more subtle view of the practicalities of the situation. With that controversy, however, we need not directly take issue here; the critical point is that the very existence of the ongoing debate on the point seems to signify that there is no preclusive constitutional rule in operation to settle the point one way or the other.

It is also significant that our research shows the State of Missouri, by judicial decision, has adopted the Wigmore view and has applied it unhindered by constitutional constraint for at least the past 50 years: "Where the defendant places the victim's reputation as a violent and turbulent man before the jury, he also places his own." (*State* v. *Schlup* (Mo.Ct.App. 1990) 785 S.W.2d 796, 801; accord, *State* v. *Hill* (Mo.Ct.App. 1981) 614 S.W.2d 744, 752; *State* v. *Robinson* (Mo. 1939) 130 S.W.2d 530, 531-532.) We have found no case law holding that Missouri's adoption of the Wigmore view offended federal constitutional due process principles.

The federal Supreme Court recently held that the scope of the federal due process clause does not accomplish the constitutionalization of every issue arising under the applicable rules of evidence; to the contrary, the category of evidentiary infractions which violate due process will be construed narrowly. (*Dowling* v. *United States* (1990) 493 U.S. 342, 352 [107 L.Ed.2d 708, 720, 110 S.Ct. 668].) In *Dowling*, the issue was the admissibility in a federal robbery prosecution of evidence that the defendant also committed another robbery, for which he had been acquitted. Although the articulated theory of admissibility in *Dowling* was not to prove the defendant's character as a robber, we believe the Supreme Court's rationale in rejecting a due process challenge would apply here as well: "We recognize that the introduction of evidence in circumstances like those involved here has the potential to prejudice the jury or unfairly force the defendant to spend time and money relitigating matters . . . . The question, however, is whether it is acceptable to deal with the potential for abuse through nonconstitutional sources like the Federal Rules of Evidence, or whether the introduction of this type of evidence is so extremely unfair that its admission violates 'fundamental conceptions of justice.' [Citation.] [¶] Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly." (*Ibid.*, fn. omitted.)

We believe the federal Supreme Court would conclude that section 1103(b)'s allowance of certain types of character evidence in rebuttal, only after the defendant first raises the issue by presenting evidence of the victim's character in order to prove the defendant's own reasonable response to alleged provocation or attack, is not so "extremely unfair" as to be within the "very narrowly" defined class of evidentiary statutes which violate "'fundamental conceptions of justice.'" Nor do we doubt that our own Supreme Court would reach the same result under the similar guarantee in the California Constitution. (Cf., e.g., *People* v. *Hansel* (1992) 1 Cal.4th 1211, 1219-1220 [4 Cal.Rptr.2d 888, 824 P.2d 694] [rejecting an analogous constitutional challenge under the federal and state due process clauses]; *People* v. *Benson, supra,* 52 Cal.3d at p. 789 ["We are not persuaded that the admission of such evidence [as to the defendant's violent character in death sentencing proceedings]—in this particular case or generally—affects, in any constitutionally significant way, the fairness of the proceedings, the treatment of 'similarly situated' defendants, the risk of arbitrary and capricious decisionmaking, or the reliability of the outcome."].)

We conclude that section 1103(b) was constitutionally applied in this case. While we agree with appellant that evidence he engaged in an unrelated domestic dispute or other altercations would not normally be admissible in

this murder prosecution, a very credible argument could be made against appellant's being allowed to show by his evidence that the victim was a violent man—implying or explicitly stating appellant was a peaceable person who acted only in response to the victim's violence—without facing evidence contesting this defense theory. Certainly the statute in question here, which merely allows such evidence in rebuttal to defense evidence, does not offend constitutional principles of due process. Appellant has a choice as to presenting evidence of the victim's character, which is similar to many tactical choices at trial—such as deciding whether to testify, or whether to present direct evidence of his own good character. The defense choice of strategy often makes admissible in rebuttal certain evidence which would not be admissible in the prosecution's case-in-chief. There is no due process violation in allowing the defense to govern the admission of such evidence in rebuttal.

Further, we believe any arguable constitutional error on the facts of this particular case would have to be considered harmless. (See *Chapman* v. *California* (1967) 386 U.S. 18, 22-24 [17 L.Ed.2d 705, 709-710, 87 S.Ct. 824, 24 A.L.R.3d 1065].) Most, if not all, of the evidence in question here would have been independently admissible to test appellant's testimony that after his stomach injury he became a nonviolent man who avoided conflicts. (See *People* v. *Lankford* (1989) 210 Cal.App.3d 227, 240-241 [258 Cal.Rptr. 322] [Once defendant testified he had reformed and had had no criminal activity after his release from prison, the prosecution could rebut this claim by showing the defendant's criminal conduct after his release.].) Further, as we said in *Lankford* and could just as easily say here, "The case was obviously not a close one; no grave doubt of appellant's guilt existed." (P. 241.) Appellant's claim that he shot the victim without warning, in the back, from some distance away, in self-defense as part of a struggle "would have strained the credulity of the most gullible jury." (*People* v. *Joiner* (1976) 54 Cal.App.3d 910, 916 [127 Cal.Rptr. 166].)

III. DISPOSITION

The judgment of conviction is affirmed.

Smith, Acting P. J., and Benson, J., concurred.