Filed 6/21/13  P. v. Maldonado CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046918 |
| v. | (Super. Ct. No. 10CF2752) |
| ADRIAN MALDONADO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

A jury convicted defendant Adrian Maldonado of aggravated assault (Pen. Code, § 245, subd. (a)(1)) and possession of a deadly weapon, to wit, brass knuckles (Pen. Code, § 12020, subd. (a)(1)). The jury also found true a great bodily injury allegation (Pen. Code, § 12022.7, subd. (a)) accompanying count 1. The trial court sentenced defendant to 14 years in state prison, a sentence based in part on defendant's criminal history. On appeal, defendant contends the court prejudicially erred by admitting evidence under Evidence Code section 1103 (section 1103) of defendant's past violent conduct. Defendant also asserts the court abused its discretion by declining to dismiss a prior strike for purposes of sentencing. We reject both claims and affirm the judgment.

FACTS

On June 27, 2010, Benjamin Bud accompanied his girlfriend to a convenience store for the purpose of renting a video. Bud smoked a cigarette while his girlfriend perused the video selections. Out of nowhere, Bud was struck in the side of his face by what felt like a baseball bat. When Bud looked up, defendant was standing above him with his fist cocked, wearing brass knuckles. Bud knew defendant through mutual friends. Defendant said, "Shoot at me again, see what happens." Bud had no idea what defendant was talking about. Defendant then left the scene, later denying to police that he knew Bud at all before claiming Bud had previously shot at him. Bud suffered severe injuries to his face, including a fracture on his upper jaw, two separate nasal bone fractures, and a caved-in nose.

DISCUSSION

*Admission of Defendant's Past Violent Incidents*

Defendant's theory of the case was that his actions amounted to self-defense. Defendant testified that Bud, while engaged in an oral confrontation with defendant outside the convenience store, put his fists up and "made a flinch" toward defendant. Defendant denies using brass knuckles and claims Bud's injuries were the result of one regular punch.

Before trial, the parties disputed the admissibility of potential testimony pertaining to an incident that occurred earlier in June 2010 (about two to three weeks prior to the night defendant punched Bud). At the pretrial hearing, defense counsel stated this evidence would "establish that Mr. Bud, despite his status as the victim in this case, does have a little bit of a tendency to get hotheaded." The court ruled such evidence fell under section 1103, which provides in relevant part that "[i]n a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by [Evidence Code] Section 1101 if the evidence is: [¶] (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character." (§ 1103, subd. (a).)

Pursuant to the court's ruling, defendant testified that during this earlier incident, Bud approached defendant holding a BB gun. Defendant further testified that Bud told defendant (using foul language and a threatening tone) to leave and pointed the BB gun at defendant. Defendant heard several BBs whizzing by his head. Bud admitted he was shooting a BB gun on the night in question, but testified he was not involved in a verbal confrontation with defendant and did not shoot the BB gun in defendant's direction.

3

In light of the court's ruling allowing evidence of Bud's conduct during the prior BB gun incident, the prosecutor argued he was entitled to introduce evidence of defendant's prior violent conduct. "[C]haracter evidence is generally inadmissible to prove a person acted in conformity with it on a given occasion." (*People v. Myers* (2007) 148 Cal.App.4th 546, 552.) But pursuant to section 1103, subdivision (b), "evidence of the defendant's character for violence or trait of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is not made inadmissible by [Evidence Code] Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant under paragraph (1) of subdivision (a)." "In other words, if . . . a defendant offers evidence to establish that the victim was a violent person, thereby inviting the jury to infer that the victim acted violently during the events in question, then the prosecution is permitted to introduce evidence demonstrating that (1) the victim was not a violent person and (2) the defendant was a violent person, from which the jury might infer it was the defendant who acted violently." (*People v. Fuiava* (2012) 53 Cal.4th 622, 696.)

The court authorized the prosecutor to elicit testimony concerning a prior incident in which defendant fought with a neighbor, which resulted in a battery conviction in 2002, and a prior criminal threat charge, to which defendant pleaded guilty in 2008.[1] Defendant testified about the 2002 incident (mostly on direct examination, presumably to preempt cross-examination), explaining he had suffered a battery

---

[1] Defendant did not claim at trial and does not argue on appeal that his testimony affirming he was convicted of misdemeanors (as opposed to testimony describing actual specific instances of past conduct) was inadmissible hearsay. (See, e.g., *People v. Cadogan* (2009) 173 Cal.App.4th 1502, 1513-1515 [discussing admissibility of testimony about misdemeanor convictions in context of defendant's credibility].) We therefore ignore this issue.

conviction after hitting a neighbor who had struck defendant first after the two had argued. On cross-examination, defendant agreed that he thinks this prior incident was a case of self-defense, despite his conviction for battery. In closing argument, the prosecutor argued defendant's prior convictions indicated defendant had a "character trait for violence."

The essence of defendant's argument on appeal is that his BB gun incident testimony was not really section 1103, subdivision (a), evidence. Instead, the BB gun incident testimony was directly relevant to defendant's state of mind on June 27 and the objective reasonableness of defendant's subjective belief that he needed to defend himself. (See *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 [For use of force "to be in self-defense, the defendant must actually and reasonably believe in the need to defend"]; *People v. Minifie* (1996) 13 Cal.4th 1055, 1060 ["A defendant charged with assaultive crimes who claims self-defense may present evidence that the alleged victim had previously threatened him"]; *People v. Garvin* (2003) 110 Cal.App.4th 484, 488 [upon request, jury must be instructed with regard to "the effect of the victim's antecedent threats or assaults against the defendant on the reasonableness of defendant's conduct"].)

If the BB gun incident was not admitted under section 1103, subdivision (a), defendant contends there was no justification for allowing evidence of past instances of violence involving defendant. (§ 1103, subd. (b) [such evidence may be "offered after evidence" pertaining to victim's character or trait evidence].) Clearly, evidence concerning Bud's actions at the convenience store on June 27 would not be character evidence. (See *People v. Myers*, *supra*, 148 Cal.App.4th at p. 552 [defendant's testimony about police "officer's aggressive conduct at the time of the incident did not constitute character evidence for the purposes of" § 1103].) In defendant's view, genuine section 1103, subdivision (a) evidence of past conduct bearing on the victim's character for

5

violence would only include incidents not involving defendant (e.g., unbeknownst to defendant, Bud shot John Smith one year ago).

Of course, this is not what defendant argued at trial. Defense counsel agreed with the court that the issue should be analyzed under section 1103. Defense counsel represented to the court that the importance of the BB gun incident was to establish Bud had "a tendency to get hotheaded" and "hostile." Defense counsel stated during closing argument that Bud "is the kind of guy that after a couple of drinks at a barbeque maybe his personality changes. Maybe he all of a sudden turns into Mr. Tough Guy. It's a possibility. . . . And he is not going to be the one that backs down, so maybe in front of his friends he took that BB gun as to show everyone hey, watch what I'm going to do. I'm a tough guy." Defense counsel opposed the admission of evidence pertaining to defendant's past violent conduct based on claims that two of the incidents were too remote in time to be probative and that other conduct led only to misdemeanors, not that section 1103 was inapplicable. Defense counsel conceded the 2008 incident "for criminal threats . . . probably would fall within the purview of [section] 1103."

It is true defense counsel *also* referenced the effect of the BB gun incident on defendant's state of mind and the circumstances in which defendant acted. During closing argument, defense counsel told the jury that if it found defendant knew about Bud's past threats or violent conduct, it could "consider that information in deciding whether the defendant's conduct and beliefs were reasonable." But the court did not limit the admissibility of the BB gun incident evidence to determining defendant's actual and reasonable belief in the need to punch Bud in the face on June 27, 2010. Defendant was entitled to, and did, argue that Bud is a hostile, hotheaded person who, in keeping with his character for violence, instigated the June 27, 2010 incident.

As an initial matter, defendant forfeited his argument by not raising it below. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 19-20; Evid. Code, § 353, subd. (a).) Even were the issue not forfeited, we would conclude the court did not abuse its

6

discretion. (See *People v. Gutierrez* (2009) 45 Cal.4th 789, 827-828 [evidentiary rulings under § 1103 reviewed for abuse of discretion].) The BB gun incident could be, and was, used for a dual purpose. On the one hand, the BB gun incident was relevant to defendant's subjective belief (and the objective reasonableness of his belief) in the need for self-defense on the night he viciously punched Bud. On the other hand, the BB gun incident was relevant to an inference that Bud had a violent character, an inference that could affect the jury's view of what actually occurred outside the convenience store on June 27, 2010 (as opposed to what defendant perceived subjectively or what was objectively reasonable for him to believe). By eliciting evidence of Bud's violent character under section 1103, subdivision (a), defendant opened the door to evidence of his own violent character under section 1103, subdivision (b).

Finally, we note that any potential error by the court under section 1103 was harmless because "[m]ost, if not all, of the evidence in question here would have been independently admissible to test" defendant's testimony that he is "really not" a violent person despite the injuries suffered by Bud. (*People v. Blanco* (1992) 10 Cal.App.4th 1167, 1176.)

*Refusal to Strike a Prior Strike at Sentencing*

The court sentenced defendant to 14 years in prison. This total prison term was comprised of several constituent parts: the midterm of three years for Count 1 (Pen. Code, § 245, subd. (a)(1)), doubled to six years pursuant to the Three Strikes law (Pen. Code, § 1170.12, subd. (c)(1)); a great bodily injury enhancement of three years (Pen. Code, § 12022.7, subd. (a)); and an additional five years for defendant's prior serious felony conviction (Pen. Code, § 667, subd. (a)(1)).

Defendant contends the court erred by refusing to dismiss a prior strike (see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529-531) and reduce his sentence accordingly. Penal Code section 1385, subdivision (a), states in relevant part

7

that a judge "may . . . in furtherance of justice, order an action to be dismissed." "[P]ursuant to Penal Code section 1385[, subdivision ](a), a trial court may strike an allegation or vacate a finding under the so-called 'Three Strikes' law [citation] that a defendant has previously been convicted of a 'serious' and/or 'violent' felony as defined therein." (*People v. Williams* (1998) 17 Cal.4th 148, 151-152, fn. omitted.) In determining whether to exercise its discretion to do so, a court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id*. at p. 161.)

During an earlier proceeding, the court struck one of two prior strikes against defendant, which both apparently pertained to burglary convictions arising out of a single sequence of events involving defendant entering his stepfather's bedroom. At the sentencing hearing, however, the court did not strike the remaining strike. Along with citing the benefit defendant had already received in this case in a prior proceeding (i.e., one strike being dismissed), the court justified its overall sentencing approach to the case: "The way the court sees it, this is not the victim picking a fight. The victim is distracted looking at his girlfriend, trying to get a DVD . . . and wham, from the side, the defendant with brass knuckles does a devastating hit on him. It was a sucker punch all the way. [¶] Defendant used a weapon. I'm looking at the factors under aggravation. [Citation.] Used a weapon, victim was vulnerable, there's a danger to society because of the violence. As the probation department said, there was no real provocation. . . . [¶] Defendant poses a danger to society. His convictions are increasingly serious. And he served a prior state prison term, which the court is striking. [¶] So, I think it's fairly lenient to call this a midterm. And the court would exercise its leniency that way."

8

We review the trial court's determination not to strike or vacate a prior serious and/or violent felony conviction allegation or finding "under the deferential abuse of discretion standard . . . ." (*People v. Carmony* (2004) 33 Cal.4th 367, 371.)  Our review of the record suggests the court was aware of its discretion to dismiss the remaining strike, the court did not consider any impermissible factors in denying dismissal, and the ultimate result of the sentencing process was not "'an "arbitrary, capricious, or patently absurd" result' under the specific facts" of this case.  (*Id*. at p. 378.)  Thus, the court was well within its discretion.

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

FYBEL, ACTING P. J.

THOMPSON, J.

9