Filed 9/7/16  P. v. Miller CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064666 |
| v. | (Super.Ct.No. RIF1405068) |
| MICHAEL EDWARD MILLER, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Edward D. Webster (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) and Helios (Joe) Hernandez, Judges.  Affirmed.

MaryBeth LippSmith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A.

1

Gutierrez, and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Pursuant to a plea agreement, defendant and appellant Michael Edward Miller, Jr., pled guilty to possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) and possession of ammunition by a felon (Pen. Code, § 30305, subd. (a)). In return, the remaining enhancement allegation was dismissed and defendant was sentenced to the agreed-upon term of 16 months in state prison. Defendant's sole contention on appeal is that the trial court erred in denying his suppression motion. We reject this contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND[1]

At around 10:00 a.m., on October 2, 2014, Riverside County Sheriff's Department Deputy Robert Wilson was dispatched to Chicago Avenue regarding a man with a gun. Geraldine Kittelson was the reporting party. When Deputy Wilson arrived at about 10:20 a.m., Kittelson and David Barylski were at the location. Kittelson informed Deputy Wilson that defendant had been staying with her uncle, Barylski, for a couple of weeks; and that Barylski had called Kittelson to come over because defendant had "worn out his welcome." Kittelson further reported that she had encountered defendant holding

---

[1] The factual background is taken from the August 19, 2015 hearing on the suppression motion.

a shotgun and that when Kittelson told defendant to put the shotgun away, defendant responded, " 'You better leave me alone before I snap.' "

As Deputy Wilson was speaking with Barylski and Kittelson, defendant exited a shed at the rear of the property. Kittelson pointed defendant out to Deputy Wilson and said, " 'That's him right there.' " Deputy Wilson contacted defendant and told him to keep his hands where he could see them because the report involved a shotgun. The deputy then conducted a patdown search of defendant's person. As Deputy Wilson was conducting the patdown search, he felt a cylindrical object that felt like a shotgun shell in defendant's rear pocket. Deputy Wilson asked defendant what the object was, and defendant stated it was a shotgun shell. Deputy Wilson pulled the object out from defendant's pocket and confirmed his expert belief that the object was a 12-gauge shotgun shell. Deputy Wilson asked defendant why the shell was in his pocket, and defendant replied that he did not know. Deputy Wilson then asked defendant where he put the shotgun. Defendant responded that a friend took it for him. Deputy Wilson also asked defendant if he could search the shed to see if the shotgun was in there. Defendant replied, " 'Go ahead.' " Deputy Wilson entered the shed and saw a 12-gauge shotgun standing in a corner by a television set. The shotgun matched the description given by Kittelson. The shed was described as a "hangout" area.

Deputy Wilson acknowledged that he did not conduct a "records check" on defendant prior to arriving at the location. The deputy explained that defendant's name is common and that he did not know defendant's date of birth, but he tried to obtain it.

3

Deputy Wilson also admitted that he did not see a shotgun or any weapons in defendant's hands, or any large bulges in defendant's clothing when he saw defendant coming out of the shed. Deputy Wilson further acknowledged that he did not write in his report that he had asked defendant what the object in defendant's pocket was before Deputy Wilson pulled it out.

Following Deputy Wilson's testimony, defense counsel argued that the deputy exceeded the scope of a permissible patdown search, because when Deputy Wilson encountered defendant, defendant was not holding a weapon. Defense counsel further claimed that since the patdown was unlawful, defendant's consent was involuntary. The prosecutor argued that Deputy Wilson responded to an eviction in process and was advised the suspect had a shotgun; that such a situation was sufficient to place the deputy on high alert; and that once the reporting party identified defendant, the deputy could conduct a lawful patdown search for officer safety. The prosecutor further stated that the deputy conducted a simple patdown of the exterior of defendant's clothing and found an item he believed to be a shotgun shell and that defendant admitted the shell was in his pocket before it was removed. Finally, the prosecutor argued that there was nothing to indicate defendant's consent to search the shed was involuntary.

The trial court denied defendant's suppression motion. The court explained that Deputy Wilson was called to the scene because of a report of a person holding a weapon; and that when the deputy arrived, he learned that the person—defendant—was being evicted and that defendant might "snap." The court concluded that under these

4

circumstances, Deputy Wilson could protect himself by searching defendant to ensure he did not have additional weapons on his person; and that once the deputy found an item that could be a potential weapon, and which the deputy believed to be a shotgun shell, he could remove it from defendant's pocket. The court also noted that even if the patdown was illegal, the deputy would have an interest in locating the shotgun for safety reasons based upon what Kittelson had reported.

## II

## DISCUSSION

Defendant argues that the trial court erred in denying his suppression motion because the deputy did not have probable cause to arrest defendant or seize the shotgun.[2] The problem with this argument is that defendant *never* presented this issue to the trial court. In the trial court, defendant complained about the identity of the reporting party,

---

[2] Defendant moves to disregard factual and procedural portions of the respondent's brief taken from testimony adduced at the preliminary hearing as well as arguments raised in defendant's written motion to suppress. These documents appear in the clerk's transcript and are a part of the record on appeal. We deny the motion to strike the challenged portions of the respondent's brief, because our practice is to disregard improper argumentation and baseless statements of facts. Moreover, defendant's written motion to suppress evidence is *relevant* to the suppression issue raised in this appeal. In cross-examining Deputy Wilson, defense counsel raised the deputy's preliminary hearing testimony at the suppression hearing. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [normally, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered].) Accordingly, we find defendant's assertions in support baseless and deny defendant's motion to strike portions of the respondent's brief.

the scope of the patdown search, and whether defendant's consent to search the shed was voluntary.

In *People v. Williams* (1999) 20 Cal.4th 119, the California Supreme Court held appellate review of the denial of a suppression motion, " 'must be limited to those [issues] raised during argument . . . .' [Citation.]" (*Id*. at p. 136.) The court was emphatic that a defendant must "specify the precise grounds for a motion to suppress" and stated, "defendants who challenge some specific aspect of a search or seizure *other than the lack of the warrant* must specify the nature of that challenge at the outset. [Citation.] The determinative inquiry in all cases is whether the party opposing the motion had fair notice of the moving party's argument and fair opportunity to present responsive evidence." (*Id*. at p. 135.) The court concluded any issue not specifically raised in the trial court cannot be argued on appeal. (*Ibid*.)

A thorough analysis of the transcript of the suppression hearing shows defendant's trial counsel never argued defendant's arrest was unreasonable; whether the deputy was entitled to seize the shotgun; whether the deputy was unaware defendant was a felon, on parole or probation; or whether defendant was within the class of persons prohibited from possessing firearms. The entire focus of defense counsel's argument was on the scope of the patdown. While his attorney certainly questions the deputy on whether the deputy conducted a records check on defendant, it was never asserted as a ground for a constitutional challenge to the arrest. Defendant's written suppression motion also did not challenge the arrest but rather focused on the identity of the reporting party, the scope

of the patdown search, and the consent to search the shed. Consequently, the prosecution did not elicit testimony supporting the arrest or the deputy's knowledge concerning defendant's status as a felon, and the trial court did not rule on whether there was probable cause to arrest defendant or to seize the shotgun. The issue cannot be raised on appeal. (*People v. Williams*, *supra*, 20 Cal.4th at p. 136.)

Defendant responds in his reply brief that this claim is cognizable on appeal; that this court has the discretion to consider constitutional issues raised for the first time on appeal; and that this issue presents a purely legal issue involving undisputed fact. Defendant's contentions are unmeritorious. As defendant somewhat acknowledges, there is no evidence in the record upon which we are able to consider the merits of the present claim.[3]

In support, defendant relies on *People v. Allen* (1974) 41 Cal.App.3d 196 (*Allen*) and *People v. Blanco* (1992) 10 Cal.App.4th 1167 (*Blanco*). *Allen* involved the question of whether the defendant's Fifth Amendment rights were violated when the authorities compelled him to provide a hair sample while he was in custody. (*Allen*, at p. 201.) *Blanco* concerned a constitutional due process challenge to Evidence Code section 1103, even though the defendant only argued before the trial court that the statute did not apply. (*Blanco*, at pp. 1169, 1171-1172.) The *Blanco* court, relying on *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 (*Hale*) and *Allen*, at page 201, footnote 1, addressed the defendant's

---

[3] In his opening brief, defendant asserts "Neither party developed the record very well at the hearing on the motion to suppress."

constitutional challenge. (*Blanco*, at pp. 1172-1173.) *Hale*, also cited by defendant, held that "although California authorities on the point are not uniform, our courts have several times examined constitutional issues raised for the first time on appeal, especially when the enforcement of a penal statute is involved [citation]." (*Hale*, at p. 394.)

The situation here is very different because only such evidence as bore upon the grounds set forth by defendant was presented. This is in stark contrast to the situation where a reviewing court addresses a constitutional challenge to a statute or reviews a trial court's ruling based on undisputed facts. Here, there were no facts whatsoever elicited at the suppression hearing concerning the deputy's probable cause to arrest defendant or to seize the shotgun.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ     

P. J.

We concur:


McKINSTER   

    J.


SLOUGH    

    J.

8