Filed 11/4/24  P. v. Williams CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE EDWARD WILLIAMS III,<br><br>      Defendant and Appellant. | C098584<br><br>(Super. Ct. No. 21F7341) |

After an altercation with a group of teenagers at a park, defendant Lawrence Edward Williams III drove his van over a median and struck two of them.  A jury found defendant guilty of two counts of assault with a deadly weapon and two counts of hit-and-run involving injury, and also found true that defendant personally inflicted great bodily injury.  The trial court sentenced defendant to a total aggregate term of 15 years.

On appeal, defendant contends:  (1) one of his hit-and-run convictions must be reversed because a person may not be convicted of multiple counts of hit-and-run for hitting more than one person in a single incident; and (2) defense counsel rendered ineffective assistance of counsel for failing to object under Evidence Code section 352 to

1

introduction of evidence of defendant's prior armed robbery conviction. We accept the People's concession that one of defendant's hit-and-run convictions must be stricken. The judgment is otherwise affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2021, about 11:00 p.m., a group of seven teenagers—B.D., S.P., K.F., K.M., J.O., M.B., and E.D.[1]—were walking on the Sundial Bridge in Redding. They were laughing and talking amongst themselves. Just before getting off the bridge, M.B. made a joke about urinating off the bridge when he was younger, and J.O. joked about urinating on people below. Defendant and his girlfriend (later identified as S.S.), who were below the bridge, heard the joke. A heated exchange of words ensued between defendant and/or S.S. and members of the group of teenagers.

Defendant walked up from under the bridge, followed by S.S., and confronted the group. More words were exchanged, until defendant or S.S. called B.D., who is mixed race, the "N word," which elicited an angry response from him. Physically, the confrontation initially involved just pushing and shoving. Then S.S. threw a beer that struck a member of the group, and the confrontation escalated into a fist fight. The spilled beer on the glass surface of the bridge made it slippery, and the combatants ended up on the ground, where fighting continued. The fight broke up and defendant and S.S. walked off the bridge toward the parking lot, while members of the group followed them to end of the bridge, taunting them.

Defendant and S.S. got into defendant's van in the parking lot with defendant in the driver's seat. The van pulled out of a parking space and proceeded down the aisle, but then turned left, circled around, and accelerated to where the teenagers were crossing the road in the parking lot. The van, with its lights off, came down the middle of the road

---

[1] All of the group testified at trial except for S.P., whose police interview was played for the jury. We refer to members of the group of teenagers and all others by their initials, pursuant to California Rules of Court, rule 8.90(b)(10).

at 25 to 45 miles per hour toward where members of the group were walking, and they jumped out of the way. K.F. and K.M. ended up on the median. S.P. threw a rock at the van. Defendant circled back around in the parking lot and made a second pass at the group on the road at the same speed. Again, the van's lights were off. This time the van drove over the median and struck K.F. and K.M. K.M. was knocked across the roadway. He was on the ground unconscious and having a seizure. K.F. was also on the ground with a severely injured ankle. The van did not stop but made another loop around the parking lot and exited. At some point, the van's headlights were on.

M.C., an eyewitness who called 911, testified she saw the group of teenagers angrily following a couple into the parking lot from the end of the bridge. The couple was walking casually and did not seem fearful. She saw the couple get into a van with the man in the driver's seat. The van left the parking space. The man was driving normally, when he paused, turned left, and "all of sudden, they just peeled out, went flying back around." Four of the group of teenagers were standing in the roadway and three were off by the other side on the way to the bridge. She heard sounds like rocks hitting the van and saw four of the group throwing things at it. After the first pass, the van came around a second time and "went straight through the boys. And it even hesitated slightly here, like slow acceleration here and then just hopped the curb." M.C. testified that "there were four boys in the median . . . and [the man] drove straight over and I thought it hit two of them." She testified that this appeared to be deliberate. One of the boys was deflected off the van, and she thought the van ran over the other one. The van did not stop after it hit them and kept going. The van made a third loop and left the parking lot. M.C. testified that the incident "happened rather fast, actually. It was like they left, van drove around, van drove around, the van ran over the boys and left."

When M.C. saw the van go over the curb and hit the boys, she called 911. In the recording of the 911 call, M.C. reported, "I'm down here at the Sundial Bridge and a minivan is just leaving, um, the Sundial Bridge area. They just ran over someone in the

3

parking lot." She said, "They went flying through the parking lot really fast, um, towards, like, six or seven guys . . . ." M.C. continued: "We're across the parking lot just watching it happen. They went flying to the median and, like, straight out, like, four guys [*sic*]."

A Redding police officer arriving on the scene was handed a damaged cell phone with a card holder on the back that contained defendant's credit cards. The police were able to determine that a Dodge van with a license plate number that matched a partial plate number observed at the scene was registered to defendant.

K.M. had no memory of the incident after the point where he was struck until he awoke in the hospital. K.M. had a fractured skull and a hematoma or "brain bleed." A neurosurgeon operated on K.M.. A section of his skull was cut away to remove the hematoma and blood clots, relieve pressure, and stop the bleeding. The surgeon testified the traumatic brain injury K.M. suffered can have a wide variety of short-term and long-term effects, including affecting a person's mood, personality and stability. K.M. testified at trial that his memory is impaired, and he is still receiving neurological therapy.

The van ran over K.F.'s foot, injuring his tibia, fibula and ankle, requiring surgery. His foot was in a boot, then a cast, then back to a boot. K.F. went to physical therapy for six weeks. K.F. formerly played various sports but finds it too painful to do so now.

Defendant testified in his defense at trial. On the night of October 15, 2021, defendant was on a date with S.S. After dinner, they went to the Sundial Bridge. They walked down below the bridge. Defendant heard a group of people above say, "Hey, you guys, wouldn't it be funny if we pissed on them?" S.S. said something "rude" to the group. Someone in the group responded, "Why don't you come up here and we'll piss on you up here?"

Defendant walked up to the bridge with S.S. following behind. Words were exchanged between S.S. and the group. Members of the group blocked defendant's way across the bridge. Defendant asked S.S. not to start anything. She threw a beer at one of

4

the individuals in the group. S.S. called one of them "nigger," although defendant did not see any African Americans in the group. One member of the group hit defendant in the head. All of them joined in, punching and kicking defendant. Defendant swung back but fell to the ground. He was kicked multiple times while he was on the ground. Defendant got up to get away. He tried to walk away but the group blocked him. They were running up and hitting him in the back of the head. Defendant's lip was hanging and he was bleeding from the nose and ear. S.S. superglued his lip the next day. At the end of the bridge, the group tried to throw him off the bridge by swinging him around by his hands to "helicopter" him off the bridge, but he hit the railing. Defendant thought they were trying to kill him. Defendant was hurt but he walked away at a fast pace with S.S. behind him to where his vehicle was parked. While he walked, members of the group yelled, "We're gonna get you pussy. I'm going to kill you." During the fight, defendant lost his phone, wallet, and hat.

Defendant backed out of his parking space and proceeded through the lot. Defendant testified he believed that the headlights turn on automatically when the van is started. Defendant drove left toward the exit and encountered members of the group again. They were ranting and raving at him. He hesitated because they were in the road. When they got out of the way, he accelerated. Defendant ended up back where he started. He made a left to go back and exit, making a complete circle. Members of the group were still in the road. One of them threw a rock or piece of concrete. Defendant swerved and went over the median. Members of the group were blocking the road, so the only way out was to go over the median. Defendant never saw anyone in the median. He learned from S.S. the next day that he had hit someone.

Defendant was charged with two counts of premeditated attempted murder of K.M. and K.F., respectively (Pen. Code,[2] §§ 187, subd. (a)/664; counts 1 & 2), two

---

[2] Undesignated statutory references are to the Penal Code.

5

counts of assault with a deadly weapon, a car, involving the same victims (§ 245, subd. (a)(1); counts 3 & 4), and two counts of hit-and-run resulting in injury (Veh. Code, § 20001, subd. (b)(1); counts 5 & 6), along with two enhancements that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)). The information further alleged that defendant was convicted of a prior violent felony (§ 667.5, subd. (a)) and prior serious felony (§ 667, subd. (a)(1)), based on a 2018 conviction for armed robbery. The information also alleged a number of aggravating circumstances under California Rules of Court,[3] rule 4.421.

A jury found defendant not guilty of attempted murder and guilty of the remaining counts. The jury found true that defendant personally inflicted great bodily injury, not true that his violent conduct indicates a serious danger to society (rule 4.421(b)(1)), and true that defendant's crime involved great violence (rule 4.421(a)(1)). In a bench trial, the trial court found true that defendant suffered a prior strike and a prior serious felony conviction. The court further found true as aggravating circumstances that defendant's prior convictions were of increasing seriousness (rule 4.421(b)(2)), defendant had served a prior prison term (rule 4.421(b)(3)), defendant committed the current crime while on parole (rule 4.421(b)(4)), and defendant's performance on parole was unsatisfactory (rule 4.421(b)(5)).

The trial court sentenced defendant to state prison for: the lower term of two years on count 3 doubled to four years by the strike, with an additional three years for the great bodily injury enhancement; one-third the middle term of one year on count 4 doubled by the strike to two years, plus one year for the great bodily injury enhancement; the middle term of two years on count 5 doubled to four years by the strike, plus three years for the great bodily injury enhancement (stayed under § 654); and the middle term of two years on count 6 doubled to four years by the strike, plus three years for the great bodily injury

---

[3]  Undesignated rule references are to the California Rules of Court.

enhancement (stayed under § 654). The court also imposed a five-year state prison term for the prior serious felony conviction (§ 667, subd. (a)(1)). Defendant was sentenced to a total aggregate term of 15 years in state prison.

Defendant filed a timely appeal.

DISCUSSION

I

*Separate Hit-and-Run Counts*

Defendant contends that one of his hit-and-run convictions (Veh. Code, § 20001, subd. (b)(1)) should be reversed as "superfluous," because evidence showed he "committed a single offense of hit and run when, after hitting [K.F.] and [K.M.], he failed to stop and ask if [K.F.] and [K.M.] were alright and then drove away from the scene." The People concede there is insufficient evidence to support convictions for two counts of hit-and-run. We agree with the parties, based on *People v. Newton* (2007) 155 Cal.App.4th 1000, in which the court held that the defendant could be convicted of only one count of felony hit-and-run when multiple victims were injured in a single incident. (*Id.* at p. 1003; see also *People v. Campbell* (2017) 12 Cal.App.5th 666, 673-674 [holding the actus reus of Vehicle Code § 20001 is "fleeing from the scene of an injury accident," and "[m]ultiple convictions for violating a statute are appropriate only where the actus reus prohibited by the statute (the gravamen of the offense) is committed more than once"]; *People v. Calles* (2012) 209 Cal.App.4th 1200, 1217 ["there can be only one conviction for leaving the scene of an accident"].)

Vehicle Code section 20001 prohibits leaving the scene of an injury accident without presenting identification, rendering aid, or reporting the accident. (See Veh. Code, §§ 20001, 20003, 20004.) The purpose of Vehicle Code 20001 is to prevent a driver involved in an accident where someone is injured from attempting to avoid liability. (*People v. Powell* (2010) 181 Cal.App.4th 304, 316.) When there is only one accident, "the conduct commanded by [Vehicle Code] section 20001, to stop, identify,

7

and assist is only committed once." (*People v. Newton*, *supra*, 155 Cal.App.4th at p. 1003.)

Therefore, we will strike the conviction on count 6, under Vehicle Code section 20001, subdivision (b)(1), along with the state prison term of seven years, imposed and stayed under section 654. This leaves in place defendant's conviction on count 5 and the associated seven-year term in state prison, also stayed under section 654.

II

*Ineffective Assistance of Counsel*

Defendant contends that his trial counsel rendered ineffective assistance of counsel because he failed to object to admission of evidence of defendant's prior conviction for robbery under Evidence Code section 352. We disagree.

The People filed a third motion in limine under Evidence Code section 1103 to introduce evidence of defendant's violent character if defendant presented evidence of K.M.'s violent character to prove self-defense and provocation. The evidence of K.M.'s violent character that defendant sought to introduce consisted of K.M.'s December 2022 fight with H.H. and vulgar text messages K.M. sent to E.S. to incite another fight. The evidence the People proposed to present included defendant's armed robbery of a gas station in 2018 and a 2021 domestic violence incident involving S.S.

Prior to addressing the People's third motion in limine, the trial court denied the People's second motion in limine to exclude evidence of the text messages between K.M. and E.S. under Evidence Code section 352. Defense counsel argued that K.M.'s messages showed him challenging and threatening people to fight. Counsel further argued the messages showed K.M.'s use of slang words, including versions of the "N word." He concluded the messages showed K.M.'s "propensity for violence." The prosecutor responded that this evidence was "just victim smearing," and that explaining K.M. "can talk like a thug" did not aid the finder of fact in determining the truth of the allegations against defendant.

8

The trial court ruled that portions of the evidence were relevant and had probative value. The court noted that the evidence consisted of 12 pages of text messages between K.M. and E.S., who is "the significant other of the defendant's daughter." The court deferred ruling on the hearsay portions of the evidence, while noting potential bases for their admission, but concluded that "under [Evidence Code section] 352, the Court is denying the People's motion to exclude it on those grounds."

The trial court then deferred ruling on the People's third motion in limine until the court heard the prosecution's initial evidence and the defense evidence regarding K.M. The court noted that the defense was "on notice" that the People would seek to present evidence of the 2018 robbery and altercation between defendant and S.S. should the defense introduce evidence of K.M.'s violent acts.

Defense counsel began his cross-examination of K.M. with questions about the fight with H.H. Counsel also questioned K.M. about his exchanges on social media with E.S. Defense counsel offered, and the court admitted as evidence, a printout of these messages, and counsel questioned K.M. about individual messages

After K.M. was excused, the prosecutor commented that "the People's third supplemental motion in limine has become relevant," and the trial court agreed. The court asked the People to clarify the evidence they intended to submit. The prosecutor responded that the People would present evidence of the robbery conviction, including testimony of the victim, as well as testimony of R.L. about defendant's efforts after the robbery to conceal weapons and flee the state, plus the incident with S.S. The prosecutor represented that the scope of testimony would be limited to the statements of the victim and R.L. in police reports.

The trial court said that, based on its research, where the defendant introduces evidence of the victim's violent character, the defendant forfeits protection against introduction of evidence of defendant's propensity for violence. Thus, the court said its "tentative ruling [is] to allow the character evidence of the defendant with regard to the

9

prior robbery and the prior act of domestic violence." The trial court noted the robbery was four years prior to the incident in this case and the domestic violence incident was two months after. However, the court deferred its final ruling in order to review the police reports "for the purpose of understanding what the actual testimony is likely going to be and also considering Evidence Code [section] 352." In response to the trial court's inquiry, counsel for the parties agreed that a police report was the factual basis for defendant's plea in the robbery case. In closing, the trial court suggested the parties meet and confer about introduction of certified court records from the robbery case (e.g., the information and plea form), stating that it "has concerns under Evidence Code Section 352 with the information being admitted because it includes additional allegations that were not pled to." The trial court further observed that, "with regard to information that should be excluded under [Evidence Code section] 352," the court records would seem to be unnecessary.

The next day the trial court stated that it had reviewed the police reports from the robbery case. The court was skeptical that R.L.'s testimony about destruction of evidence dealt with defendant's propensity for violence and ruled it would not be admitted. The trial court added that, because defendant did not plead to destruction of evidence— meaning that issue remained in dispute—"I don't want to get into a trial within a trial under Evidence Code [section] 352."[4]

The trial court, on the other hand, concluded that the robbery victim's testimony would be admissible under Evidence Code section 1103, subdivision (b). The trial court ruled that the victim "may testify to the date, location, and circumstances of the robbery that occurred in December 2017, specifically that a person held a gun and demanded money and threatened him." The court did not admit the police reports as hearsay.

---

[4] The trial court indicated that it might allow R.L. to testify to identify defendant as the perpetrator of the robbery should he deny it.

The victim of the 2018 robbery testified that he was working the night shift at a gas station on December 27, 2017, when a man entered with a covered face, told him to hand over all the cash, and threatened to kill him if he called the police.

In his testimony on defense, defendant admitted pleading no contest to armed robbery and that he had served a prison term. S.S. did not testify.

To prevail on an ineffective assistance of counsel claim, the defendant must prove (1) the attorney's representation was deficient in that it fell below an objective standard of reasonableness under prevailing profession standards, and (2) the attorney's deficient representation subjected the defendant to prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Cain* (1995) 10 Cal.4th 1, 28.)

The trial court admitted evidence of defendant's armed robbery conviction under Evidence Code section 1103 after defendant presented the same evidence of K.M.'s violent character that the People identified in their third motion in limine, i.e., K.M.'s fight with H.H. and text messages with E.S. Evidence Code section 1103, subdivision (b) provides in relevant part: "In a criminal action, evidence of the defendant's character for violence or trait of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is not made inadmissible by Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant . . . ." (See *People v. Blanco* (1992) 10 Cal.App.4th 1167, 1169 [Evid. Code, § 1103, subd. (b) "allows the introduction of evidence of a defendant's violent acts and reputation for violence, if a defendant presents evidence as to the bad acts or reputation of the victim of a crime"].) In *People v. Fuiava* (2012) 53 Cal.4th 622, 700, the California Supreme Court observed: "Although the statute does not contain an explicit statement of the applicability of Evidence Code [section] 352 . . . we discern nothing in [Evidence Code] section 1103(b) prohibiting a

11

trial court from exercising its discretion to limit the admission of violent propensity evidence in the interest of fostering judicial efficiency, or preventing 'undue prejudice' to the defendant."

Defendant does not contend that the trial court improperly admitted evidence of defendant's armed robbery under Evidence Code section 1103 or that defense counsel was deficient for failing to object on that ground. Defendant argues solely that his trial counsel was ineffective for failing to object to admission of this evidence under Evidence Code section 352. We reject the argument because it was not reasonably probable that an objection on Evidence Code section 352 grounds would have succeeded. (*People v. Williams* (1997) 16 Cal.4th 153, 206.) The trial court ruled on the People's second and third motions in limine essentially in tandem. Since the trial court rejected the People's objection under Evidence Code section 352 to evidence of K.M.'s violent character, the court was unlikely to grant an objection on the same basis to evidence of defendant's violent character made admissible by defendant's introduction of the evidence of K.M.'s violent character.

Moreover, the trial court did consider the application of Evidence Code section 352 in ruling on the People's third motion in limine. The trial court stated that it needed to review the police reports that formed the factual basis of defendant's plea in the robbery case "for the purpose of understanding what the actual testimony is likely going to be and also considering Evidence Code [section] 352." The trial court also asked the parties to meet and confer about the admission of court records from the robbery case, because "[t]he court has concerns under Evidence Code section 352 . . . ." In addition, the trial court mentioned that the robbery occurred four years before the incident at issue. (*People v. Harris* (1998) 60 Cal.App.4th 727, 739 [" 'Remoteness' or 'staleness' of prior conduct is an appropriate factor to consider in a section 352 analysis"].) Thus, an Evidence Code section 352 objection by defense counsel would have elicited the response that the trial court had already considered that section in ruling

12

on the motion. We conclude that defense counsel did not render ineffective assistance by failing to make an objection that was certain to be overruled. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 924 ["It is well settled that counsel is not ineffective in failing to make an objection when the objection would have likely been overruled by the trial court"]; see also *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["[T]here is no merit to defendant's alternative contention that his trial counsel was ineffective for failing to object under Evidence Code section 352. Counsel is not required to proffer futile objections"]; *People v. Pierce* (2015) 234 Cal.App.4th 1334, 1337 [failure to make a meritless objection is not ineffective assistance].)

Defendant argues that, if defense counsel had made an Evidence Code section 352 objection, the trial court would have at least "sanitized" evidence of the robbery conviction. Defendant notes that he moved in limine to sanitize the description of the robbery conviction to refer only to a " 'prior felony conviction,' " if defendant testified, and the trial court granted the motion in part. However, that ruling pertained to admission of the evidence solely for purposes of impeachment. The trial court has discretion to sanitize prior convictions admitted for impeachment by allowing them to be referred to only as prior felonies. (See *People v. Sandoval* (1992) 4 Cal.4th 155, 178.) For impeachment purposes, only evidence relating to defendant's credibility was relevant. Specific facts of the prior offense showing violent behavior were not.

Evidence Code section 1103, subdivision (b) permits introduction of evidence of defendant's violent character if defendant presents evidence of the victim's violent character. In that case, specific facts become relevant. Thus, under the statute, unsanitized evidence of defendant's violent character was admissible, i.e., that he pointed a handgun at the victim and threatened to kill him if he told the police, not simply that he had been convicted of robbery. It was not merely the fact of the prior conviction that was admissible under Evidence Code section 1103 to show defendant's character for violence, but the facts underlying that conviction. In any event, the testimony of the victim was

13

brief, consisting of four pages of trial transcript, and the trial court limited his testimony "to the date, location, and circumstances of the robbery that occurred in December 2017, specifically that a person held a gun, demanded money and threatened him." Defense counsel therefore knew he had no reason to object to the prosecution eliciting these facts underlying defendant's robbery conviction. (*People v. Anderson*, *supra*, 25 Cal.4th at p. 587.)

We conclude there was no ineffective assistance of counsel.

DISPOSITION

Defendant's conviction on count 6 is stricken. The trial court is directed to prepare an amended abstract of judgment accordingly and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed as modified.

/s/
WISEMAN, J.*

We concur:

/s/
EARL, P. J.

/s/
BOULWARE EURIE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.